UNITED STATES of America,
Plaintiff,

v.

Victor J. ACCROCCO
and

Joseph J. Splawn t/a American Roofing Company, Defendants.

Civ. A. No. 2853–65.

United States District Court
District of Columbia.

March 21, 1969.

Henry J. Monahan, Asst. U. S. Atty., for United States.

John F. Cooney, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WADDY, District Judge.

In this action the United States seeks to recover by way of indemnity the amount paid by it in settlement of an action for damages for personal injuries sustained on the job by an employee of the defendants, a government contractor. The cause came on to be heard by the Court without a jury on January 15, 1969, and March 4, 1969, and the Court, having considered the evidence adduced at the trial, the briefs submitted by the parties, and the oral arguments of counsel, makes the following:

### FINDINGS OF FACT

1. On August 19, 1963, the United States entered into a contract with the defendants, t/a American Roofing Company (hereinafter sometimes called American) for the re-roofing of Building 101 at the Naval Research Laboratory in the District of Columbia. American is designated in the contract as "Contractor".

Section 11 of the general provisions of the contract provided that "the contractor shall give his personal superintendence to the work or have a competent foreman or superintendent, satisfactory to the Contracting Officer, on the work at all times during progress, with authority to act for him."

Section 12 of the general provisions of the contract required:

"(The Contractor) shall be similarly responsible for all damages to persons or property that occur as a result of his fault or negligence. He shall take proper safety and health precautions to protect the work, the workers, the public, and the property of others * * *."

Paragraph 24, sub-paragraph (c) of the contract provided: "(The Contractor) shall provide and maintain all * * * other devices necessary to provide for safety and traffic."

Paragraph 24, sub-paragraph (d) provided: " * * * the contractor will comply with all pertinent provisions of the publication 'General Safety Requirements' * * *."

Paragraph 1–1, page 1 of the General Safety Requirements states as follows: "Each employee shall be provided initial indoctrination and such continuing instruction as will enable him to conduct his work in a safe manner." Paragraph 20–2, page 73, states as follows: "Stairs, ladders, or other safe means of access shall be provided to all work areas."

2. At the time the parties entered into the above mentioned contract and at all times material thereafter, a permanent ladder was attached to the southwest corner of Building 101, extending from the ground level to the roof. After the contract was entered into and at some time prior to September 24, 1963, another government contractor installed two pipes in a horizontal position along the wall of the building. These two pipes obstructed the upper rungs of the permanent ladder and were in place on September 24, 1963. These obstructions were not visible unless one walked to the edge of the building and looked down. In order for one to descend from the roof of the building by the permanent ladder it was necessary for him to turn around with his back to the edge of the roof and descend backwards.

3. For the performance of the re-roofing contract American provided a portable extension ladder on the north side of the building for the use of its employees. Nevertheless, from time to time employees of American used the permanent ladder at the southwest corner of the building. The government had knowledge of such use and did not object. American's foreman on the job, one Warren (Sid) Turner, was aware of the existence of the obstructions to the upper rung of the permanent ladder and was also aware that from the roof the obstructions to the ladder were not visible unless one walked to the edge of the building and looked down.

4. On September 24, 1963, Owen White, an employee of American reported for duty at Building 101. This was White's first day to work at Building 101. He ascended to the roof by means of American's portable extension ladder on the north side of the building and, after performing a few minute's work on the roof, requested from his foreman, Warren (Sid) Turner, permission to change clothes. White was given such permission and was directed by Turner to use the permanent ladder to descend to the ground. White was given no warning concerning the obstructions on the permanent ladder.

5. White approached the permanent ladder, turned his back to the edge of the roof and began to descend when his foot encountered the obstruction and he was caused to fall to the ground. White sustained fractures of the arm and leg, was hospitalized for approximately 25–30 days and returned to work in March 1964. He was confined to a wheelchair for three to four weeks, underwent physical therapy and received workmen's compensation at the rate of $64.00 per week until August 1965.

6. On March 23, 1964, White filed suit in this Court against the United States under the Federal Tort Claims Act (Civil Action No. 700–64). In his complaint, White alleged that the United States was negligent in failing to maintain the permanent ladder in a reasona-bly safe condition, and in failing to warn him of the dangerous and unsafe conditions of which the United States had actual or constructive notice prior to his fall.

7. By letter dated November 23, 1965, the United States requested the defendants to participate in any settlement negotiations between the United States and Owen White. On or about December 2 and 3, 1965, defendants by counsel, declined to participate in any settlement negotiations.

8. On December 13, 1965, this Court (McGarraghy, J.) approved a settlement under the Federal Tort Claims Act in favor of White in the sum of $7500.00 and thereafter Civil Action No. 700–64 was dismissed.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter.

2. The Court-approved settlement in the amount of $7500 in Owen White v. United States, Civil Action No. 700–64 was a reasonable settlement and reflected the Government's potential liability under the Federal Tort Claims Act for failure to maintain the permanent ladder in a reasonably safe condition and/or for failure to warn the plaintiff, Owen White, of a dangerous and unsafe condition of which condition the United States had actual or constructive notice prior to White's fall. Blockston v. United States, 278 F.Supp. 576, 587 (D.Md. 1968); Rowley v. United States, 140 F. Supp. 295 (D. Utah 1956).

3. Inasmuch as the United States satisfied the Court (McGarraghy, J.) that its settlement of Civil Action No. 700–64 was reasonable and prudent, the question of actual liability of the United States to Owen White is not now before this Court. Moses-Ecco Company v. Roscoe-Ajax Corporation, 115 U.S. App.D.C. 366, 370, 320 F.2d 685, 689 (1963).

4. Failure of the defendants to warn Owen White of a nonobvious dangerous condition, the existence of which

was known to American through its agent, Warren (Sid) Turner, constituted negligence on its part. See Standard Oil Company v. Brown, 218 U.S. 78, 30 S.Ct. 669, 54 L.Ed. 939 (1910). See also Dean v. H. Koppers Co., 49 App.D.C. 230, 263 F. 626 (1920); French v. National Laundry Co., 31 App.D.C. 105 (1908).

5. Said negligence was a proximate producing cause of the injuries sustained by Owen White.

6. By virtue of its contractual obligation to "be similarly responsible for all damages to persons or property that occur as a result of his fault or negligence," American is contractually bound to indemnify the United States. That the United States may also have been negligent in discharging its duty to Owen White is irrelevant. Porello v. United States, 94 F.Supp. 952 (S.D.N.Y.1950). See also A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227 (2nd Cir.), cert. dismissed 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1958).

7. Plaintiff is entitled to recover of the defendants the sum of $7,500.00. Counsel for plaintiff shall present a form of judgment in compliance herewith.