UNITED STATES *v.* SECKINGER, TRADING AS
M. O. SECKINGER CO.

No. 395.   Argued January 14, 1970—
Decided March 9, 1970

*James van R. Springer* argued the cause for the United
States.   On the brief were *Solicitor General Griswold,
Assistant Attorney General Ruckelshaus, Peter L.
Strauss,* and *Robert V. Zener.*

*John G. Kennedy* argued the cause for respondent.
With him on the brief was *Frank S. Cheatham, Jr.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case concerns the construction of a provision common to fixed-price government construction contracts that states that the private contractor "shall be responsible for all damages to persons or property that occur as a result of his fault or negligence . . . ." The Court of Appeals for the Fifth Circuit held that the provision could not be construed to allow the Government to recover from the contractor damages suffered by the Government on account of its own negligence. 408 F. 2d 146 (1969). We granted certiorari because of the large amount of litigation that this contract clause has produced [1] and because of the divergent results that the lower courts have reached in construing the same or similar provisions.[2] 396 U. S. 815 (1969). We reverse.

## I

The United States had entered into a contract with the Seckinger Company for the performance of certain plumbing work at a United States Marine base in South Carolina. While working on this project, one of Seckinger's employees was directed by his foreman to assist a fellow employee on a particular section of pipe that had been partially constructed above a street. About four or five feet above the place where the employee was working, there was an electric wire that carried 2,400 volts of electricity. The employee accidentally

---

[1] In the petition for certiorari, the Solicitor General advised that there are presently pending 200 government suits involving the same or similar clauses.

[2] Compare, e. g., *Fisher* v. *United States,* 299 F. Supp. 1 (D. C. E. D. Pa. 1969), and *United States* v. *Accrocco,* 297 F. Supp. 966 (D. C. D. C. 1969), with, e. g., the decision of the Court of Appeals in the instant case.

came into contact with the wire, was thrown to the ground 18 feet below, and was seriously injured.

The injured employee recovered benefits under South Carolina's workmen's compensation law, S. C. Code Ann. §§ 72–1 to 72–504 (1962), and then commenced a suit in the Eastern District of South Carolina against the United States under the Federal Tort Claims Act, 28 U. S. C. §§ 2671–2680, on the theory that his injuries had been sustained as the proximate result of the Government's negligence. The United States, relying on the contract clause, moved to implead Seckinger as a third-party defendant. This motion was denied on the ground that the addition of Seckinger would "unnecessarily and improperly complicate the issues." [3]

On the merits, the South Carolina District Court found that the United States had customarily de-energized its electric wires whenever Seckinger employees were required to work dangerously near them. The court therefore held that the United States had been grossly negligent in failing to de-energize the wire in this particular case. Alternatively, the Government was held to have been negligent in failing to advise Seckinger's employees that the electric wire had not been de-energized. Concluding also that the employee had in no way contributed to his injury, the District Judge ordered that he recover a judgment against the United States in the amount of $45,000 plus costs. No appeal was taken from this judgment of the District Court.[4]

---

[3] The third-party complaint was therefore dismissed "with leave to . . . the United States . . . to take such further action at an appropriate time." The order was not appealed, and we imply no view concerning the propriety of the District Court's action.

[4] The District Court concluded, inter alia, that the negligence of the United States was the "sole cause" of the employee's injuries. We do not pause to consider what effect, if any, under

Thereafter, the United States proceeded to the District Court for the Southern District of Georgia and commenced the instant suit against Seckinger. The complaint alleged that Seckinger's negligence was solely responsible for its employee's injuries [5] and that therefore the United States should be fully indemnified for the judgment which it had satisfied. In a second count, the Government alleged that Seckinger, having undertaken to perform its contract with the United States, was obligated "to perform the work properly and safely and to provide workmanlike service in the performance of said work."

The District Court granted Seckinger's motion to dismiss the complaint on the alternative grounds, first, that the suit was barred by the prior litigation in South Carolina and, second, that the contractual language was not sufficiently broad to permit the Government to recover indemnification for its own negligence. The Court of Appeals rejected the first ground of decision,[6] but sus-

---

all the circumstances of this case, the South Carolina judgment could properly have in the instant case. The effect of the prior judgment was not raised below except as a defense contention that it constituted an absolute bar to the instant proceedings.

[5] Specifically, the United States alleged that Seckinger was negligent in that it (1) failed to request that the power distribution line be de-energized; (2) failed to request that the wires at the place where the accident occurred be insulated; (3) failed to provide safety insulation on the wires; (4) permitted, and in fact directed, the subsequently injured employee to work in close proximity to the wires; and (5) failed to prevent the employee from proceeding in a manner that was dangerous and that caused him to be injured.

[6] The Court of Appeals held that the Government's suit was not barred by principles of *res judicata* because the South Carolina District Court expressly left open the option of the United States to pursue its claim against Seckinger at a later time. We agree with this conclusion of the Court of Appeals.

tained the holding that any recovery on the contract was foreclosed to the United States because its negligence had contributed substantially to the injury. The Court of Appeals held that, under the "majority rule," an indemnitee cannot recover for his own negligence in the absence of a contractual provision which unmistakably authorizes this result. Since the contract here did not unequivocally command that the Government be indemnified for its own negligence, and because the injuries in question were thought to have been caused by the "active direct negligence" of the Government with no more than a "slight dereliction" on the part of Seckinger, no recovery whatsoever on the contract would be permitted to the United States.[7]

In the Government's view, this construction of the clause renders it a nullity, for the United States can never be held liable in tort under the Tort Claims Act or otherwise in the absence of negligence on the part of its agents. Thus, so the argument goes, the contractual provision in question can have meaning only in a context in which both the United States and the contractor are jointly negligent.[8] In that circumstance, the contractor would be obligated to sustain the full burden of ultimate liability for the injuries produced. Alternatively, the Government suggests that it is en-

---

[7] In the present state of the record, we neither accept nor reject this characterization of the relative degrees of fault of Seckinger and the United States.

[8] The Government, therefore, does not take issue with those authorities that exhibit reluctance to permit a negligent indemnitee to recover from a faultless indemnitor unless this intention appeared with particular clarity from the contract. See, e. g., Associated Engineers, Inc. v. Job, 370 F. 2d 633, 651 (C. A. 8th Cir. 1966), cert. denied sub nom. Troy Cannon Const. Co. v. Job, 389 U. S. 823 (1967).

titled to indemnity on a comparative basis to the extent that the negligence of Seckinger contributed to its employee's injuries.

## II

In the posture in which this case reaches us, the historical background of the clause [9] and evidence concerning the actual intention of these particular parties with respect to that provision are sparsely presented. We do know that the clause was required in government fixed-price construction contracts as early as 1938.[10] This fact merely precipitates confusion, however, because it was not until the passage of the Tort Claims Act in 1946, §§ 401–424, 60 Stat. 842, as amended, 28 U. S. C. §§ 2671–2680, that the United States permitted recovery in tort against itself for the negligent acts of its agents. Viewed in the pre-Tort Claims Act context, the purpose of the clause is totally unclear except, perhaps, as an exercise in caution on the part of the government draftsmen, or, conceivably, as an attempt to insulate government agents from liability in their private capacities if their negligence arguably combined with that of the contractor to produce a given injury.

In *American Stevedores, Inc. v. Porello*, 330 U. S. 446 (1947), we had before us a contractual provision that was similar to that involved here. There we noted that

[9] In context, the clause in question appears as follows:

"11. PERMITS AND RESPONSIBILITY FOR WORK, ETC.

"The Contractor shall, without additional expense to the Government, obtain all licenses and permits required for the prosecution of the work. He shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work. He shall also be responsible for all materials delivered and work performed until completion and final acceptance, except for any completed unit thereof which theretofore may have been finally accepted."

[10] See, *e. g.*, 41 CFR §§ 11.1, 11.3, 12.23, Art. 10 (1938).

the clause was susceptible of several different construc-tions, 330 U. S., at 457–458, and remanded the case to the District Court to ascertain the intention of the parties with respect to the clause. It does not appear that a similar course of action would be fruitful in the instant case. In *Porello* there were clear indications from the parties that further evidentiary proceedings in the District Court would shed light on the actual inten-tion of the parties.[11] Here, by contrast, there is not only no representation that further proceedings would aid in clarifying the intentions of the parties, but there is at least tacit agreement that the background of the clause has been explored as thoroughly as possible. In these circumstances, we have no alternative but to pro-ceed directly to the contractual construction problem.

## III

Preliminarily, we agree with the Court of Appeals that federal law controls the interpretation of the contract. See *United States* v. *County of Allegheny,* 322 U. S. 174, 183 (1944);[12] *Clearfield Trust Co.* v. *United States,* 318 U. S. 363 (1943). This conclusion results from the fact that the contract was entered into pursuant to authority

---

[11] The objective of the remand was frustrated when no additional evidence was presented to the District Court. That court merely adhered to the construction of the contract that had been adopted by the Court of Appeals, 153 F. 2d 605 (C. A. 2d Cir. 1946), namely, that the United States was entitled to full indemnity from a steve-doring contractor although both the United States and the contractor were found to have been negligent. *Porello* v. *United States,* 94 F. Supp. 952 (D. C. S. D. N. Y. 1950).

[12] "The validity and construction of contracts through which the United States is exercising its constitutional functions, their conse-quences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any State." 322 U. S., at 183.

conferred by federal statute and, ultimately, by the Constitution.[13]

In fashioning a federal rule we are, of course, guided by the general principles that have evolved concerning the interpretation of contractual provisions such as that involved here. Among these principles is the general maxim that a contract should be construed most strongly against the drafter, which in this case was the United States.[14] The Government seeks to circumvent this principle by arguing that it is inapplicable unless there is ambiguity in the contractual provisions in dispute and there exists an alternative interpretation that is, "under all the circumstances, a reasonable and practical one." *Gelco Builders & Burjay Const. Co.* v. *United States,* 177 Ct. Cl. 1025, 1035, 369 F. 2d 992, 999–1000 (1966). The Government itself, however, has proffered two mutually inconsistent interpretations of the contract clause. To be sure, one of them is pressed with considerably more enthusiasm than the other. The Government, nevertheless, must be taken implicitly to have

---

[13] Congress has provided extensive arrangements for the procurement, management, and disposal of government property. See generally 40 U. S. C. §§ 471–535 (1964 ed. and Supp. IV). As part of this statutory scheme, the Administrator of General Services is authorized to issue regulations necessary to perform his various managerial functions. 40 U. S. C. § 486 (c). Pursuant to this authority, various form contracts, one of which includes the provision that is the subject of this suit, have been promulgated for official use. 41 CFR §§ 1–16.401 to 1–16.404, 1–16.901–23A, Art. 12 (1969). See generally State Bar of California, Committee on Continuing Education of the Bar, Government Contracts Practice § 13.93 (1964).

[14] See, *e. g., Sternberger* v. *United States,* 185 Ct. Cl. 528, 543, 401 F. 2d 1012, 1021 (1968); *Sun Shipbuilding & Drydock Co.* v. *United States,* 183 Ct. Cl. 358, 372, 393 F. 2d 807, 816 (1968); *Jones* v. *United States,* 304 F. Supp. 94, 103 (D. C. S. D. N. Y. 1969).

conceded (a) that the clause is not without ambiguity and (b) that there is an alternative construction of the clause that is both "reasonable and practical." Even in the Government's view of the matter, therefore, there is necessarily room for the construction-against-drafter principle to operate.

More specifically, we agree with the Court of Appeals that a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties. This principle, though variously articulated, is accepted with virtual unanimity among American jurisdictions.[15] The

---

[15] A number of courts take the view, frequently in a context in which the indemnitee was solely or principally responsible for the damages, that there can be indemnification for the indemnitee's negligence only if this intention is explicitly stated in the contract. See, e. g., Freed v. Great A. & P. Tea Co., 401 F. 2d 266 (C. A. 6th Cir. 1968) (intention of parties must be "clear and unambiguous" necessitating a clause such as "including damage from indemnitee's own negligence"); Brogdon v. Southern R. Co., 384 F. 2d 220 (C. A. 6th Cir. 1967) (same); City of Beaumont v. Graham, 441 S. W. 2d 829 (Tex. 1969) (indemnitor's promise to indemnify for his negligent acts does not extend to indemnification for indemnitee's negligence); Young v. Anaconda American Brass Co., 43 Wis. 2d 36, 168 N. W. 2d 112 (1969) (indemnitor not liable for such portion of total liability attributable to act of indemnitee unless indemnity contract by express provision and strict construction so provides); cases collected in Annot., 175 A. L. R. 8, 29–38 (1948).

Other cases do not require that indemnification for the indemnitee's negligence be specifically or expressly stated in the contract if this intention otherwise appears with clarity. See, e. g., Auto Owners Mut. Ins. Co. v. Northern Ind. Pub. Serv. Co., 414 F. 2d 192 (C. A. 7th Cir. 1969); Eastern Gas & Fuel Associates v. Midwest-Raleigh, Inc., 374 F. 2d 451 (C. A. 4th Cir. 1967); Unitec Corp. v. Beatty Safway Scaffold Co., 358 F. 2d 470 (C. A. 9th Cir. 1966); Batson-Cook Co. v. Industrial Steel Erectors, 257 F. 2d 410 (C. A. 5th Cir. 1958).

traditional reluctance of courts to cast the burden of negligent actions upon those who were not actually at fault [16] is particularly applicable to a situation in which there is a vast disparity in bargaining power and economic resources between the parties, such as exists between the United States and particular government contractors. See *United States* v. *Haskin,* 395 F. 2d 503, 508 (C. A. 10th Cir. 1968).

In short, if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract. We can hardly say that this intention is manifested by the formulation incorporated into the present contract.[17] By its terms Seckinger is clearly liable for *its* negligence, but the contractual language cannot readily

---

[16] Several earlier cases declared clauses that purported to indemnify for the indemnitee's negligence void as contrary to public policy. See, *e. g., Sternaman* v. *Metropolitan Life Ins. Co.,* 170 N. Y. 13, 62 N. E. 763 (1902); *Johnson's Administratrix* v. *Richmond & D. R. Co.,* 86 Va. 975, 11 S. E. 829 (1890). See also *Bisso* v. *Inland Waterways Corp.,* 349 U. S. 85 (1955); *Otis Elevator Co.* v. *Maryland Cas. Co.,* 95 Colo. 99, 33 P. 2d 974 (1934).

[17] An example of an indemnification clause that makes specific reference to the effect of the negligence of the indemnitee is the following recommendation of the American Institute of Architects:

"4.18. INDEMNIFICATION

"4.18.1. The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable,

be stretched to encompass the Government's negligence as well.[18]

On the other hand, we must not fail to accord appropriate consideration to Seckinger's clear liability under the contract for "*all* damages" that resulted from its "fault or negligence." (Emphasis added.) The view adopted by the Court of Appeals, and now urged by Seckinger, would drain this clause of any significant meaning or protection for the Government, and, indeed, would tend to insulate Seckinger from potential liability

---

regardless of whether or not it is caused in part by a party indemnified hereunder." AIA Document A 201, Sept. 1967.

We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence must include an "indemnify and hold harmless" clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence. Thus, contrary to the view apparently adopted in the dissenting opinion, we assign no talismanic significance to the absence of a "hold harmless" clause. Our approach is, in this respect, consistent with *American Stevedores, Inc.* v. *Porello,* 330 U. S., at 457–458. Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention. Consequently, we hold only that, in this case, the clause that provides that Seckinger will be responsible for all damages resulting from its negligence is insufficiently broad to encompass responsibility for injuries resulting from the negligence of the Government. And, of course, the Government is entitled to no recovery unless it establishes that Seckinger was negligent. Thus the dissenting opinion mischaracterizes the scope of our holding when it states that Seckinger must "reimburse the Government for losses *it* incurs resulting from *its* negligence."

[18] See, *e. g., United States* v. *Haskin,* 395 F. 2d 503 (C. A. 10th Cir. 1968); *Brogdon* v. *Southern R. Co.,* 384 F. 2d 220 (C. A. 6th Cir. 1967); *Shamrock Towing Co.* v. *City of New York,* 16 F. 2d 199 (C. A. 2d Cir. 1926); *Williams* v. *Midland Constructors,* 221 F. Supp. 400 (D. C. E. D. Ark. 1963); *City of Beaumont* v. *Graham,* 441 S. W. 2d 829 (Tex. 1969); *Young* v. *Anaconda American Brass Co.,* 43 Wis. 2d 36, 168 N. W. 2d 112 (1969).

in any circumstance in which any negligence is also attributable to the United States. Whatever may have been the actual intention of the parties with respect to the meaning of the clause, it is extremely difficult to believe that they sought to utilize this contractual provision to reduce Seckinger's potential liability under common law or statutory rules of contribution or indemnity.[19]  Yet, that is arguably the result if the clause is

---

[19] An employer's liability for injuries suffered by his employees to which his negligence partially contributed varies from jurisdiction to jurisdiction.  In the absence of workmen's compensation statutes, the employer and the third-party tortfeasor would be jointly and severally liable, under traditional principles, for the injuries produced.  In a majority of jurisdictions, contribution or indemnity is available either by statute or common law, as a device for the redistribution of the burden among the joint tortfeasors.  See generally W. Prosser, Law of Torts §§ 47, 48 (3d ed. 1964).  In 1956, when Seckinger's employee was injured, South Carolina law was unclear in this respect, apparently permitting contribution or indemnity under some circumstances.  See generally Comment, Indemnity Among Joint Tort-Feasors—As Affected by the Federal Employers Liability Act, 17 S. C. L. Rev. 423 (1965).

Workmen's compensation provisions, now enacted in all States, have considerable effect on the employer's potential liability to the third-party tortfeasor.  However, these statutes vary greatly in the categories of employers and employees to which they apply, see generally, A. Reede, Adequacy of Workmen's Compensation (1947), and even today about two-thirds of the statutes provide that coverage is voluntary as to both employers and employees.  2 A. Larson, The Law of Workmen's Compensation § 67.10 (1969).

When a workmen's compensation plan does cover particular employers and employees, a third-party suit against an employer who was also negligent is barred by the majority rule, although recovery is not infrequently permitted on implied or quasi-contractual theories.  See, e. g., Associated Engineers, Inc. v. Job, 370 F. 2d 633, 651 (C. A. 8th Cir. 1966); 2 A. Larson, supra, §§ 76.00–76.53.  Whether such a suit is permitted under South Carolina law apparently has not been authoritatively determined.  See generally Burns v. Carolina Power & Light Co., 88 F. Supp. 769 (D. C. E. D. S. C. 1950).

interpreted to mean that Seckinger's liability is limited to situations in which it, as opposed to the United States, is the sole negligent party.

Furthermore, in this latter situation, it is perfectly clear that, both before and after the passage of the Tort Claims Act, the United States could not, in any event, be charged with liability in the absence of negligence on its part. In short, the construction of the clause adopted by the Court of Appeals tends to narrow Seckinger's potential liability and, also, limits its application to circumstances in which no doubt concerning Seckinger's sole liability existed. In the process, considerable violence is done to the plain language of the contract that Seckinger be responsible for *all* damages resulting from *its* negligence.

A synthesis of all of the foregoing considerations leads to the conclusion that the most reasonable construction of the clause is the alternative suggestion of the Government, that is, that liability be premised on the basis of comparative negligence.[20] In the first place, this interpretation is consistent with the plain language of the clause, for Seckinger will be required to indemnify the United States to the full extent that its negligence, if any, contributed to the injuries to the employee.

Secondly, the principle that indemnification for the indemnitee's own negligence must be clearly and unequivocally indicated as the intention of the parties is

---

[20] A number of courts have reached comparable results. See, *e. g.*, *Brogdon* v. *Southern R. Co.*, 384 F. 2d 220 (C. A. 6th Cir. 1967); *Williams* v. *Midland Constructors*, 221 F. Supp. 400 (D. C. E. D. Ark. 1963); *C & L Rural Elec. Coop. Corp.* v. *Kincaid*, 221 Ark. 450, 256 S. W. 2d 337 (1953), after remand, 227 Ark. 321, 299 S. W. 2d 67 (1957); *Young* v. *Anaconda American Brass Co.*, 43 Wis. 2d 36, 168 N. W. 2d 112 (1969). See also *United States* v. *Haskin*, 395 F. 2d 503 (C. A. 10th Cir. 1968); *Shamrock Towing Co.* v. *City of New York*, 16 F. 2d 199 (C. A. 2d Cir. 1926).

preserved intact. In no event will Seckinger be required to indemnify the United States to the extent that the injuries were attributable to the negligence, if any, of the United States. In short, Seckinger will be responsible for the damages caused by its negligence; similarly, responsibility will fall upon the United States to the extent that it was negligent.

Finally, our interpretation adheres to the principle that, as between two reasonable and practical constructions of an ambiguous contractual provision, such as the two proffered by the Government, the provision should be construed less favorably to that party which selected the contractual language. This principle is appropriately accorded considerable emphasis in this case because of the Government's vast economic resources and stronger bargaining position in contract negotiations.[21]

---

[21] While it is true that the interpretation adopted by the Court of Appeals is even less favorable to the Government than that which we adopt, we have concluded, for reasons previously stated, that the Court of Appeals' view would drain the clause of any significant meaning and is decidedly contrary to its plain language.

A 1941 letter from the Comptroller General, 21 Comp. Gen. 149, relied upon in dissent, sheds no light whatever on the problem of contract construction before us. There the Comptroller General, in commenting upon a question that he said was "of first impression" suggested that, under some circumstances, a contractor under a *cost-plus-fixed-fee* contract may seek reimbursement from the Government, as an element of his actual costs, for damages that he sustained by reason of his negligence. Since the contract clause in question was introduced long before the 1941 letter, it obviously was not responsive to any issues raised by the Comptroller. Moreover, we deal in this case with a *fixed-price* construction contract, a type of contract with which the Comptroller General was in no way concerned. Thus, no support is provided for the facile assumption of the dissent that, merely because a *cost-plus* contractor may arguably seek reimbursement for additional costs produced by his own negligence, it follows that a contractor committed to

For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the District Court for further proceedings consistent with this opinion.[22]

*Reversed and remanded.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS join, dissenting.

The standard form that the Government uses for its fixed-price construction contracts has long contained a single sentence saying that the contractor "shall be re-

---

complete a project for a *fixed price* also may seek reimbursement because of damage caused by his own negligent acts.

We agree with the dissenting opinion that the contract clause does mean exactly what it says. What it says is that Seckinger shall be "responsible for all damages" arising from its negligence, that is, that the burden of Seckinger's negligence may not be shifted to the United States. To be sure, the clause bars any attempt by Seckinger to obtain reimbursement from the Government for Seckinger's negligence. But an interpretation that limited the operation of the clause to this narrow situation would constitute an impermissible frustration of the contractual scheme, for such a construction would shift the burden of Seckinger's negligence to the United States through the medium of a recovery against the Government by the injured employee. The contractual objective—that liability for the contractor's negligence not be shifted to the United States—can be achieved in cases of concurrent negligence when there has been a prior recovery against the Government only by resort to the comparative negligence analysis that we have adopted, which requires Seckinger to indemnify the Government, but only to the extent that the Government was called upon, in the first instance, to respond in damages as a result of Seckinger's negligence.

[22] Because we have taken the view that the rights and liabilities of Seckinger and the United States *inter se* are governed by contract, we need not reach the Government's alternative theory, rejected by the Court of Appeals, that Seckinger breached an implied warranty of workmanlike service.

sponsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work." [1]   For more than 30 years it has evidently been understood that these words mean what they rather clearly say—that the contractor cannot hold the Government for losses he incurs resulting from his own negligence. [2]   The provision, in short, is what the Court of Appeals called "a simple responsibility clause."   408 F. 2d 146, 148. [3]   But today this innocuous boilerplate language is turned inside out.   For the Court says that the provision really is a promise by the contractor to reimburse the Government for losses *it* incurs resulting from *its* negligence.

To be sure, the Court does not go quite so far as to hold that this obscure clause operates as a complete liability insurance policy.   But the Court does hold that the clause requires the contractor to indemnify the Government "to the full extent that its negligence, if any, contributed to the injuries to the employee."   The magnitude of the burden the Court imposes is well illus-

---

[1] This sentence is contained in a paragraph entitled "Permits and Responsibility for Work, etc."   See *ante,* at 208 n. 9.

[2] I have found no previous reported decision construing this clause as the Court construes it today.

[3] It will not do to say, as the Court says today, that this construction of the clause makes its purpose "totally unclear" or "would drain this clause of any significant meaning or protection for the Government . . . ."   For without such a clause, there would surely be room for the contractor to claim reimbursement from the Government for unforeseen increased costs incurred on account of his negligence, particularly where the Government was jointly negligent. With respect to contracts *not* containing such a clause—cost-plus contracts, for example—the Comptroller General advised the Secretary of War almost 30 years ago that the Government may, indeed, be liable to the contractor under such circumstances.   See 21 Comp. Gen. 149, 156–157 (1941).

trated by the circumstances of this case. Here an employee of the contractor was injured in the scope of his employment on plumbing work that the contractor was performing at the Paris Island Marine Depot in South Carolina. The employee recovered from the contractor the benefits to which he was entitled under the state workmen's compensation law. The employee then sued the Government under the Federal Tort Claims Act, claiming that his injuries had actually been caused by the Government's negligence. The Federal District Court agreed, finding that the negligence of the United States was the "sole cause" of the employee's injuries and awarding him $45,000 in damages. The Court today says that the United States can now recover an indeterminate portion of this $45,000 from the contractor, because the contractor has *agreed* to "indemnify the United States . . . ."

Despite intimations in the Court's opinion to the contrary, we do not deal here with "common law or statutory rules of contribution or indemnity."[4] The only question the Court decides is the meaning of the words of a clause in a government contract.[5] I think the

---

[4] Under the law of South Carolina—which determines the Government's liability in tort to the injured employee, 28 U. S. C. § 1346 (b); *Richards* v. *United States*, 369 U. S. 1—the general rule is that there is no right to contribution among joint tortfeasors. *Atlantic Coast Line R. Co.* v. *Whetstone*, 243 S. C. 61, 68–70, 132 S. E. 2d 172, 175–176. Moreover, since the injured employee has accepted his award against Seckinger under the state workmen's compensation statute, he cannot hold Seckinger in tort. S. C. Code Ann. §§ 72–121, 72–123 (1962); *Adams* v. *Davison-Paxon Co.*, 230 S. C. 532, 545, 96 S. E. 2d 566, 572–573. So Seckinger can hardly be cast in the role of a tortfeasor in any event.

[5] The Court's conclusion that the Court of Appeals' construction of the clause might "reduce Seckinger's potential liability under common law or statutory rules of contribution or indemnity" seems

meaning attributed to that clause today is as unconscionable as it is inaccurate.

The clause first appeared in government contracts at least eight years before the enactment of the Federal Tort Claims Act in 1946. Before the passage of that Act the United States could not be sued in tort for personal injuries. Thus there was absolutely no reason for the Government to secure for itself a right to recovery over against an alleged joint tortfeasor. Yet we are asked to believe that the drafter of this clause was so prescient as to foresee the day of government tort liability nearly a decade in the future, and so ingenious as to smuggle a provision into a standard contract form that would, when that day arrived, allow the Government to shift its liability onto the backs of its contractors. This theory is nothing short of incredible.

In drafting its construction contracts the United States certainly has both the power and the resources to write contracts providing expressly that it will pass off onto its contractors, either in whole or in part, liability it incurs for damages caused by its own judicially determined negligence. The Government could require its contractors to hold it harmless without regard to fault on their part, or it could establish a proration of liability arising from the joint negligence of the parties. But the contractual provision before us does neither. It no more says that the contractor shall reimburse the Government for his share of joint negligence than that he shall be a liability insurer for the Government's sole negligence.

---

wholly incorrect. The contractor's agreement not to seek reimbursement or contribution from the Government would have no bearing upon the question whether local "common law or statutory rules of contribution and indemnity" give the Government any right to recover from the contractor.

The Court nonetheless manages to discover that the clause amounts to a contribution agreement, relying for its conclusion upon cases involving, not the simple responsibility clause before us, but express indemnification agreements with "hold harmless" clauses.[6] This result is said to be desirable because it ensures a fair distribution of loss between those jointly responsible for the damage. But when Seckinger entered into this contract, it had every reason to expect that its liability for injuries to its employees would be limited to what is imposed by the South Carolina compensation law. That law relieved it of responsibility in tort in exchange for its guarantee that its employees would recover without regard to fault. Presumably its bid on the government project reflected its reasonable expectation that this would be the extent of its liability on account of employee accidents. Now the Court heaps an unforeseen federal contractual burden atop the requirement the State has already imposed.[7]

If the Government wants to impose additional liabilities upon those with whom it contracts to do its work, I would require it to do so openly, so that every bidder may clearly know the extent of his potential liability. Even in the domain of private contract law, the author of a standard-form agreement is required to state its terms with clarity and candor.[8] Surely no less is required

---

[6] These cases are cited in the Court's opinion, *ante*, at 215 n. 20.

[7] Under South Carolina law Seckinger has been subrogated to its injured employee's claim against the United States to the extent of its own compensation payment. S. C. Code Ann. § 72–124 (1962). But the Court today subjects Seckinger to the incremental risk of liability in contribution, in a yet-to-be-determined proportion, for the employee's added recovery in his tort suit against the Government.

[8] *E. g., Chrysler Corp.* v. *Hanover Ins. Co.*, 350 F. 2d 652, 655; *Riess* v. *Murchison*, 329 F. 2d 635, 642; Restatement of Contracts § 235 (e); 3 A. Corbin on Contracts § 559 (1960).

of the United States of America when it does business with its citizens.[9]

Mr. Justice Holmes once said that "[m]en must turn square corners when they deal with the Government."[10] I had always supposed this was a two-way street. The Government knows how to write an indemnification or contribution clause when that is what it wants. It has not written one here.

I would affirm the judgment.

---

[9] *Sternberger* v. *United States*, 185 Ct. Cl. 528, 543, 401 F. 2d 1012, 1021; *Jones* v. *United States*, 304 F. Supp. 94, 101.

[10] *Rock Island, A. & L. R. Co.* v. *United States*, 254 U. S. 141, 143.