**Mrs. Thurman D. TODD, etc., Plaintiff,**

v.

**JAMES E. DEAN MARINE DIVERS, INC., Tidex, Inc., Brown & Root, Inc., and Trunk Line Gas Company, Defendants.**

**Civ. A. No. 69–1864.**

United States District Court,
E. D. Louisiana,
New Orleans Division.
March 31, 1971.

———◆———

Robert Leake, Hammett, Leake & Hammett, New Orleans, La., for James E. Dean Marine Divers, Inc.

Theodore G. Dimitry and George Healy, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Tidex, Inc. and Brown & Root, Inc., Edwin K. Legnon, New Orleans, La., of counsel.

CASSIBRY, District Judge:

This case arose out of the death of a deep sea diver. All facets of the resulting multi-party donnybrook have been compromised and settled with one exception—the cross-claims of Tidex, Inc. and Brown & Root, Inc. against James Dean Marine Divers, Inc. for contractually obligated indemnity. The Court has been requested to decide these cross-claims on the basis of the contract in question, a stipulation of material facts, the exhibits annexed thereto, and memoranda of counsel.

## I.

The plaintiff is the widow of Thurman Todd, who died on August 5, 1969, while employed by James Dean Marine Divers, Inc. as a marine diver engaged in the inspection of an undersea pipeline approximately thirty-five marine miles off the Louisiana coast. Dean had been hired under a written contract with Trunkline Gas Company to inspect the pipeline which was being laid by Brown and Root, Inc. for Trunkline. Brown & Root in turn had contracted with Tidex, Inc. to operate a chartered vessel in connection with the pipelaying activities.

Todd died when his air hose and lifeline became entangled in one of the vessel's propellers or propeller shafts.

Following his death, Todd's widow brought this suit on behalf of herself and as personal representative of the estate of Thurman Todd, naming Dean, Tidex, Brown & Root and Trunkline as original defendants. Tidex and Brown & Root tendered their defenses to Dean and called on Dean for full indemnity for their costs of defense and attorneys' fees, and for any judgment awarded against them, pursuant to the terms of the contract by which Dean was hired by Trunkline. That contract forms the basis for this claim by Tidex and Brown & Root against Dean and its contractual liability insurers for indemnity. Dean refused to accept the tenders of defense and Tidex and Brown & Root proceeded to defend themselves and to file cross claims against Dean for indemnity, costs and attorneys' fees under the contract. Brown & Root subsequently called upon Tidex under the terms of their operating agreement for a defense of any liability which might be visited upon it vicariously by virtue of Brown & Root's status as bareboat charterer (owner *pro hac vice*) of the vessel which was being operated by Tidex. Tidex accepted the defense of Brown & Root, substituting its own counsel as counsel for Brown & Root and thereby becoming entitled to assert all rights and defenses of Brown & Root.

Shortly before trial, settlement was reached with the plaintiff by the tort liability underwriters of Dean and by Tidex and its insurers, for the sum of $212,500.00, one half of which was paid by Dean and its tort liability underwriters, and the other half of which was paid by Tidex and its insurers. Tidex and its insurers specifically reserved all rights to proceed against Dean and its contractual liability underwriters.

## II.

The contract between Dean and Trunkline begins with a preamble which identifies the parties to the contract and briefly describes the nature of the work

which is the subject of the contract; it is called the "Agreement". Appended to the "Agreement" are several "Exhibits", beginning with Exhibit A–1 entitled "General Terms and Conditions" which is a pre-printed document. Next is Exhibit A–2 which, for the first time, sets out the specific terms of the construction contract pertaining to diving work. This second Exhibit, in fact, contains the first mention of the words "dive", "diving" or "divers" apart from a brief paragraph in the "agreement" identifying the contract as one pertaining to diving. The next two Exhibits, A–3 and A–4, pertain to pricing, and Exhibits A–5 and B are left blank and marked "Not Applicable". The final Exhibit, C, is entitled "Schedule of Drawings" and contains only a single reference to an offshore map. For present purposes, the only relevant parts of the contract are contained in the "Agreement" and Exhibits A–1 and A–2.

The pertinent parts of the Dean Trunkline contract provide as follows:

*Exhibit A–1. Section 6.1*

6—RESPONSIBILITY, INSURANCE, CLAIMS AND BOND

6.1 RESPONSIBILITY — Except as otherwise expressly provided in this Section 6.1, Contractor shall pay, save and protect Company from all claims, damages, expenses and liabilities of every kind and nature arising out of acts of Contractor or of its agents, employees, or subcontractors engaged in carrying out this Contract or in the performance of the work thereby done hereunder, whether on or off any right of way obtained by Company or whether on or off the premises owned by Company, and Contractor agrees to indemnify and to hold Company harmless from and against all claims of and liability to third parties (including without limitation all employees of Company or Contractor and all subcontractors and their employees) for injury to or death of persons, or loss of or damage to property arising out of or in con-

nection with the performance of the work thereby done hereunder, *except where such injury, death, loss or damage has resulted from the negligence of Company without negligence or fault on the part of Contractor or any subcontractor*. (Emphasis added).

*Exhibit A–2. Section 6.6*

6.6 WORK FROM VESSELS OWNED BY OTHERS—Contractor while working on or from any vessel owned or operated by Company and/or Brown & Root, Inc. (Brown & Root) or others in performance of this contract assumes full, complete, sole and exclusive responsibility for all diving operations hereunder and the safety of the divers engaged in the performance of such operations hereunder and for all risk of loss or damage to tools, equipment or property used in connection with such operations. In the event aid or assistance is rendered to Contractor, or any contractor or subcontractor of said parties, either in the normal course of operations in performing under this contract or in situations of emergency, Contractor assumes exclusive and full responsibility and liability for any injury, loss or damage resulting from or arising in connection with the furnishing of said aid or assistance and Contractor agrees to hold harmless Company and Brown & Root from any liability arising therefrom.

\*     \*     \*     \*     \*     \*

Contractor agrees to protect, indemnify and save Company and Brown & Root and any contractor or subcontractor of either of said parties performing work in connection with the work described in this contract, harmless from and against all claims, demands, damages, losses, expenses, costs, liabilities, injuries and causes of action of every kind and character arising in favor of any person or persons, including em-

ployees and agents of Contractor, Company, Brown & Root, or said contractors or subcontractors, or the families of any such employees or agents by reason of death or personal injury to persons or damage to or loss of property occurring in connection with, arising out of, or in any wise incident or related to Contractor's performing services and operations under this contract, *regardless of whether same be caused by negligence of Company, and/or Brown & Root and/or said contractor or subcontractors of either of said parties*; and Contractor shall defend any and all actions based thereon at Contractor's sole cost and expense and shall pay all costs, attorney's fees, and other expenses arising therefrom. (Emphasis added)

The position of each side is relatively simple. Tidex relies on the emphasized portion of Section 6.6 of Exhibit A–2 as providing for indemnity by Dean to Tidex, as a subcontractor of Trunkline and third-party beneficiary of the Dean-Trunkline contract, "regardless of whether [Thurman Todd's death was] caused by negligence of * * * [Tidex]". In other words, Tidex claims it is a third-party beneficiary of the Dean-Trunkline contract, and that Section 6.6 of Exhibit A–2 of that contract provides for Tidex to be indemnified even for its own negligence.

Dean, on the other hand, points to a rule of construction contained in the Contract, at page 1 of the "Agreement" part, as follows:

" * * * In the event of any conflict between any parts of the Contract, then the Agreement (as defined), Exhibits A–1, A–2, A–3, A–4, A–5, B and the Drawings referred to in Exhibit C, shall prevail in such order as named."

Thus, if part of A–1 conflicts with part of A–2, then A–1 controls; if part of A–3 conflicts with part of A–2, then A–2 controls, and so on. Dean contends that the indemnity provision of Section 6.6, Exhibit A–2, relied upon by Tidex, is in conflict with an indemnity provision contained in Section 6.1 of Exhibit A–1, that A–1 controls under the contract's own rule of construction, and that therefore no indemnity is due Tidex under the contract.

### III.

■■ A contract must be interpreted as a whole in such a manner as to give effect to the intentions of the contracting parties whenever such intentions are not contrary to law or in violation of public policy. Further, the law of contractual indemnity is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligence where such intention is not expressed clearly and unequivocally. Grigsby v. Coastal Marine Service, 412 F.2d 1011, 1039 (5th Cir. 1969) ; *cf.* United States v. Seckinger, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970). But where such intention is clear and unequivocal, a contract of indemnity "constitutes the law between the parties and will be enforced as written." Mills v. Fidelity & Casualty Co. of N. Y., 226 F.Supp. 786, 790 (W.D.La.1964), aff'd 338 F.2d 341 (5th Cir. 1964).

■ Clearly, the intent of Section 6.6 of Exhibit A–2 was that Dean would assume full responsibility for death or injury to its diving employees while conducting work from vessels owned or operated by others and would defend and fully indemnify Trunkline, Brown & Root and their subcontractors (of whom Tidex was one) regardless of whose negligence caused such death or injury. Tidex contracted with Brown & Root to operate its chartered vessel in connection with the pipelaying activities being performed for Trunkline. Tidex was therefore entitled to claim the benefit of the indemnity provision as a third-party beneficiary of the Dean-Trunkline contract. See: Great American Insurance Co., New York v. Gulf Marine Drilling No. 1, 302 F.2d 332 (5th Cir. 1962). Dean thereby obligated itself to "assume full responsibility" for the death of its diver and to

"protect, indemnify and save * * * Brown & Root and any contractor or subcontractor * * * harmless from and against" any claims arising out of the death or personal injury to its divers "regardless of whether same be caused by negligence of [Trunkline] and/or Brown & Root and/or said contractor or subcontractors. * * * "

Thus Dean's defense to the indemnity claim boils down to the proposition that although Section 6.6 of Exhibit A–2 clearly and unequivocally provides that Dean will indemnify Tidex even for its own negligence, that indemnity provision is voided and no indemnity is due because it is in conflict with the indemnity provision contained in Section 6.1 of Exhibit A–1, which pre-empts and controls by virtue of the contract's own rule of construction. Accordingly, a determination whether there is indeed a conflict between those two provisions will be dispositive of this case.

The clause upon which Dean relies is that portion of Section 6.1 of Exhibit A–1, "General Provisions", by which Dean agreed to protect *Trunkline* with respect to claims by third parties, "except where such injury, death, loss or damage has resulted from the negligence of [Trunkline] without negligence or fault on the part of [Dean] or any subcontractor." This indemnity provision concerns only Dean's liability to *Trunkline* for the assumption of *Trunkline's* liability to third-parties. It does not contemplate Dean's liability directly to Trunkline's contractors or subcontractors. The provision is quite general and speaks of damages which one might ordinarily expect to be incurred in the laying of pipelines through areas where damage might occur to "crops, trees, live stock, levies, drainage ditches, jetties, gates, posts, fences, buildings, streets, highways, bridges, sidewalks, parkways, railroad tracks, canals and other similar structures or areas." Obviously, the primary intent here was to cover physical damage to third parties during construction of pipelines on land.

By contrast, Exhibit A–2, which is prefaced by the statement, "[T]he provisions of this Exhibit are in addition to the General Terms and Conditions set out in Exhibit A–1", specifically covers Dean's assumption of liabilities directly to Trunkline's contractors and subcontractors who "own or operate" vessels from which Dean conducted its diving operations.

It is readily apparent that the two clauses are not identical; but the essential difference is that they were intended to cover two different situations. There is no conflict because one merely supplements the other. The first clause, Section 6.1 of Exhibit A–1, deals generally with Dean's obligation to indemnify Trunkline for claims against Trunkline by third-parties, without further qualification. It does not refer to the specific job where diving is being performed at all, and it clearly was not intended to cover each specific situation which might be set forth in more detail in the subsequent portions of the contract. Section 6.1 of Exhibit A–1 deals exclusively with the rights of indemnity of Trunkline, which is no longer a party to these proceedings, and does not pertain to indemnification of Trunkline's subcontractors performing a specific job such as marine diving.

While Section 6.1 may be considered somewhat more narrow in scope than Section 6.6 of Exhibit A–2, there is no inconsistency or conflict between the two provisions. The latter clause simply covers a specific situation which was not the subject of the more general former clause.

There can be no logical reason for ignoring, an Dean would have the Court do, the clear and unequivocal language of Section 6.6 of Exhibit A–2, specifically providing for indemnity in this case. Such a result would require a most strained and tortured construction of what appears to be a very clear and unequivocal contractual undertaking of liability by Dean.

Tidex and Brown & Root are entitled to a full defense and to full indemnity

for the amount of the settlement payment, conceded by Dean to be reasonable, and their attorneys' fees throughout this action, as third-party beneficiaries to Dean's clear and unequivocal undertaking to defend and indemnify Trunkline's subcontractors for all losses arising from its diving operations, even though caused by the sole or concurrent negligence of such subcontractors.

Counsel for Tidex and Brown & Root will prepare and submit a formal judgment in accordance with the foregoing opinion, which constitutes the Court's findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.