GRACE & CO. (PACIFIC COAST), a corporation, Appellant,

v.

PITTSBURGH TESTING LABORATORY, a corporation, Appellee.

No. 15408.

United States Court of Appeals
Ninth Circuit.

Oct. 21, 1957.

Bogle, Bogle & Gates, Thomas L. Morrow, Seattle, Wash., Wallace, Garrison, Norton & Ray, San Francisco, Cal., for appellant.

Graham, Green & Dunn, Ben J. Gantt, Jr., Frank T. Rosenquist, Seattle, Wash., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant Grace & Co. (Pacific Coast), hereafter Grace, is in the exporting business. On or about the 12th day of May, 1952, it entered into a contract with the Government of New Zealand to supply said Government with a designated amount of steel billets to be manufactured according to specification set out in the contract as "ASTM-A-17/29". Said formula is translated in standard trade publications of the American Society for Testing Materials.

Grace was not in the manufacturing business and therefore sought bids from various steel producers to furnish the specified steel billets, culminating in letters of offer and of acceptance being exchanged between Grace and Seattle Foundry, hereafter Foundry. The trial court made no findings as to the terms of the contract between Grace and Foundry, but the letters did contain reference to the specifications "ASTM-A-17/29". Grace, being without special knowledge

as to the manufacture and composition of said billets and in order to protect itself, obtained the services of Pittsburgh Testing Laboratory, a firm having special competence in the field. Pittsburgh was to test from time to time the product produced by Foundry in order to insure delivery to Grace of steel billets according to the specifications in the contract between Grace and New Zealand.

Foundry manufactured and delivered to Grace *cast steel billets* whereas the specifications in the New Zealand contract called for *forged or rolled steel billets*. The Government of New Zealand refused to accept the cast steel billets, so that Grace was forced to refund to New Zealand a portion of the agreed purchase price it had advanced to Grace.

█ Pittsburgh contracted with Grace to inspect and certify all steel billets as to whether they complied with the specifications of "ASTM-A-17/29", which meant a certification that the steel was rolled or forged. Pittsburgh certified the billets, but they admittedly were cast. Pittsburgh contended that during oral negotiations before the written contract of inspection was entered into, it was understood that cast steel would comply, but as was held by the trial court, this understanding was superseded by the terms of the written contract between Pittsburgh and Grace.

The trial court found that a certain amount of damages resulted to Grace by reason of the negligence of Pittsburgh in failing to inspect the product properly, said negligence resulting in the delivery to Grace of billets other than forged or rolled steel. However, it held that the measure of damages due Grace from Pittsburgh was the fee paid Pittsburgh by Grace. The court denied recovery for the actual damages sustained by Grace, on the ground (1) that the actual damages were not within the contemplation of the parties at the time of making the contract, relying on the rule announced in Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Repr. 145 (1854), and (2) that the actual damages were caused either by

Grace in contracting with Foundry for cast billets, a product which would not meet the requirements of the New Zealand Government, or by Foundry in not producing the type of billets called for in its contract with Grace, it being the theory of the trial court that the damages were caused by someone other than Pittsburgh and hence no responsibility could be attributed to Pittsburgh.

The trial court, with full understanding of the rule that parole evidence will not be admitted to vary the terms of a written contract, rejected offered testimony for that purpose, but did consider parole evidence as to the understanding of the parties prior to the execution of the written contract on the question of damages.

The parole evidence considered by the court in assessing damages had to do with what would constitute a breach of a contract different from that ultimately entered into by the parties. The court reasoned that since the parties did not have the contract which was breached in mind, they could not have contemplated the damages flowing from the real contract.

█ However, the written contract superseded the previous understanding; it was the contract breached; and the understanding of what would constitute a breach of the contract the parties may have had in mind at the time of the oral understanding must give way to a contemplation of damages which naturally flow from the breach of the real contract.

The purpose of Grace in employing Pittsburgh was to insure the delivery of the material described in its contract with New Zealand. It relied, and had a right to rely, on Pittsburgh performing that service. Had Pittsburgh called the attention of Grace to the fact that the material being furnished by Foundry did not meet the specification which Grace had informed Pittsburgh it was supposed to get, then from that moment on Grace would have been in a position to either cancel its contract with Foundry

or take other appropriate action to minimize its loss.

 From the letters exchanged which form the contract between Pittsburgh and Grace, Pittsburgh knew or should have known, that the billets were to be resold to New Zealand and that a particular kind of billet was to be furnished New Zealand by Grace. It seems reasonable to conclude from these facts that Pittsburgh should be charged with knowledge that, unless Grace furnished the kind of billets specified in its contract with New Zealand, New Zealand would not accept them and Grace would suffer a loss. The damages which Grace should receive because of the breach by Pittsburgh of its contract are such as may be fairly and reasonably considered as arising naturally, i. e., according to the usual course of things, from such breach of contract itself. Hadley v. Baxendale, supra. It seems clear that Grace having made a contract to furnish New Zealand with a specific material and having proffered something else which was rejected, the resulting damages arise naturally from the usual course of things, which in itself is a sufficient reason to find that Pittsburgh foresaw the damages suffered. Restatement of Contracts, § 330.

■ The trial court also found that Pittsburgh could not be held for damages other than fees paid it by Grace, because the damages were caused by other parties. We cannot agree with this conclusion because, as we have hereinbefore pointed out, had Pittsburgh performed its contract, Grace would have been put on notice that it was not getting the material it had agreed to furnish New Zealand and could have refused to accept the material manufactured by Foundry and made arrangements to get forged or rolled billets as called for by the New Zealand contract.

Judgment reversed and case remanded with instructions to the trial court to reconsider the question of damages in accordance with the views expressed in this opinion.

Reversed.