GENERAL ELECTRIC COMPANY,
Plaintiff, Appellee,

v.

UNITED STATES DYNAMICS, INCOR-
PORATED, Defendant, Appellant.

No. 7136.

United States Court of Appeals
First Circuit.

Nov. 19, 1968.

Harold M. Linsky, Boston, Mass., for
appellant.

Frank B. Frederick, Boston, Mass.,
with whom William B. Duffy, Jr., and
Johnson, Clapp, Ives & King, Boston,
Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-
ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellee, General Electric Company
(G.E.), sued appellant United States

Dynamics, Incorporated (Dynamics) seeking rescission of a contract for the purchase of a gas purifying machine, alleging nonconformity with specifications. Dynamics denied any breach and asserted that the contract was for a purifier to be constructed in accordance with sample and that the equipment was so constructed. It also counterclaimed for its expenses in making changes in the purifier and for the value of the sample machine which has not been returned. The court rendered summary judgment for G.E. on both its complaint and Dynamics' counterclaim on the basis of the pleadings, depositions, exhibits, and affidavits.

The apparatus in suit was designed to remove oxygen from nitrogen in a pipe line. It proved defective (so far as G.E.'s needs were concerned) in failing adequately to exclude hydrogen—used in reactivating certain chemicals used in the process—from the main stream of gas flowing through the system. In 1962, G.E. took delivery of a small gas purifier from Dynamics for observation and testing to see whether G.E. would be interested in purchasing a machine with much larger capacity. By both brochure and conversation G.E. was advised that the model operated so that "No hydrogen mixes with the main gas stream." G.E. had the model for over a year and found that it could remove oxygen as claimed.

Thereafter a contract for a larger unit was entered into. Dynamics by letter agreed that the purchase order included the following documents: a Dynamics letter of price quotations; a G.E. Purchase Order and Specifications requiring in part that "No other impurities should be introduced into the affluent nitrogen"; a Dynamics letter of agreement to comply with the terms including a specific "guarantee that the equipment * * * will purify the quantity of gas specified to the level required"; a guaranty of supply of chemicals and a patent indemnity agreement.

The equipment was made, delivered, and installed. Trouble soon developed in that hydrogen was detected in the main stream of gas. Dynamics undertook to solve the problem. G.E. shipped the unit back to Dynamics. Consultation with a testing laboratory revealed no ready solution. The unit was once again installed at G.E. for further tests. Finally, G.E. returned it to Dynamics, which accepted it without prejudice. Only toward the end of this travail was it ascertained that the smaller model itself was defective in excluding hydrogen from the main stream.

Summary judgment is defended by G.E. on the ground that all the evidence demonstrates that the equipment did not exclude impurities from the gas stream as the contract required; that the contract between the parties, represented by the documents referred to above, was integrated and superseded all previous negotiations or understandings. Dynamics argues that the written contract should not govern since it, having no test facilities of its own, relied on G.E.'s superior testing facilities, and was misled by G.E.'s favorable reports of the operation of the model to make a guaranty of purity. Alternatively, Dynamics argues that the proper interpretation of the contract is that it called for a sale by sample; i. e., a contract to produce simply a larger scale version of the smaller model rather than a device which would meet certain specifications.

 While we are fully aware that summary judgment is a judicial device available only when the effluent stream of controversy has been purified by the exclusion of any genuine issues of material fact, see e. g., Rogen v. Ilikon Corp., 361 F.2d 260 (1st Cir. 1966), we are satisfied that the test has been met in this case. We note first that the letter above referred to, identifying the documents to be considered part of the purchase order effectively integrated them into one contract. A.L.I., Restatement of Contracts, § 228 (1st ed. 1932). This being so, the specification proscribing the introduction of impurities into the effluent nitrogen and the explicit guarantee that the equipment would purify the gas, cannot, absent very

special circumstances not here present, be nullified by antecedent understandings. See 3 Corbin on Contracts, § 573, p. 357 (1960); Dunlop Tire and Rubber Corp. v. Thompson, 273 F.2d 396 (8th Cir. 1959).

 What Dynamics is really contending is not that there was an antecedent understanding or negotiation but an antecedent misunderstanding in that Dynamics allegedly expected G.E. to test for exclusion of hydrogen as well as removal of oxygen while G.E., not conscious of such expectation and testing only for oxygen removal, unintentionally misled Dynamics by its reports that the model was operating satisfactorily. This set of circumstances could not, however, be categorized as a "course of dealing," "usage of trade," or "course of performance" which could explain or supplement the integrated contract under the Uniform Commercial Code as enacted in Massachusetts General Laws, c. 106 § 2–202. Nor can Dynamics profit by section 2–316(3) (b) of the Mass. Uniform Commercial Code, M.G.L.A. c. 106, § 2–316(3) (b), having to do with negation of implied warranties if a buyer has examined a sample. Wholly apart from the question whether a small-scale model can be considered a "sample" of a much larger device, inspection could not offset express warranties.

Dynamics, to take a view of the evidence most favorable to it, would have us read out of a contract a subsequent express commitment in writing because of a prior inchoate impression from G.E. that the commitment was a safe one to make. No more can we do this than to say that a seller of a horse who relies on the innocent bad judgment of a buyer that the horse is sound and expressly warrants its soundness can escape the burden of his bargain.

 What we have said disposes also of that part of Dynamics' counterclaim which seeks recovery of expenditures in attempting to make the equipment conform to G.E.'s specifications. As to the claim for the value of the earlier model, still held by G.E., we note first that there was never any request by Dynamics to return it. Secondly, regarding Dynamics' allegations that G.E. replaced certain portions and removed certain chemicals, the record indicates only that the portions were replaced to improve the model's operation and that some pellets of chemicals were removed from the model for analysis. There is no indication that either action was not permitted or contemplated by Dynamics, was damaging to the apparatus, or could possibly be categorized as an exercise of dominion.

Affirmed.