**UNITED STATES of America, Appellant,**

v.

**FRANKLIN STEEL PRODUCTS, INC., Appellee.**

*No. 71-2428.*

United States Court of Appeals, Ninth Circuit.

July 16, 1973.

Rehearing Denied Sept. 10, 1973.

Michael H. Stein (argued), L. Patrick Gray, III, Asst. Atty. Gen., Washington, D. C., Wm. Mathew Bryne, Jr., Robert L. Meyer, U. S. Attys., Larry L. Dier, Asst. U. S. Atty., Los Angeles, Cal., Walter H. Fleischer, Civil Div., Dept. of Justice, Washington, D. C., for appellant.

Albert A. Dorn (argued), Los Angeles, Cal., for appellee.

Before HAMLIN and CHOY, Circuit Judges, and SKOPIL,* District Judge.

CHOY, Circuit Judge:

The United States sued under 28 U.S. C. § 1345 to recover the contract price plus consequential damages from Franklin Steel Products, Inc. (Franklin) for breach of express warranty to provide aircraft engine bearings which conformed to contract specifications. After a non-jury trial, the district court entered judgment for Franklin. We reverse.

In 1962 Franklin entered into two contracts to furnish the Aviation Supply Office of the Department of the Navy 321 master rod bearings, Curtis-Wright aircraft engine part number 171815, at a cost of $90 each. The contracts required that all bearings be in new and unused condition and meet particular specifications, including a certain percentage of tin to reduce corrosion and steel of a certain hardness to resist stress and fatigue. Failure of the bearings to conform to these specifications could cause complete engine failure and loss of both aircraft and pilots.

The contracts called for inspection by the government before acceptance.[1] Inspection procedures were to include magnaflux or zyglo or the equivalent thereof and were specified as 100% final inspection by the Navy's O & R Shop for conformace to the applicable specifications. In addition, the contract contained the following warranty clause:

(a) Notwithstanding inspection and acceptance by the Government of articles furnished under this contract or any provision of this contract concerning the conclusiveness thereof, the Contractor warrants that at the time of delivery (i) all materials delivered under this contract will be free from defects in material or workmanship and will conform with the specifications, and all other requirements of this contract; . . .

(b) Within one year after the delivery of any article under this contract, written notice may be given by the Government to the Contractor of any breach of the warranties in paragraph (a) of this clause as to such article. Within a reasonable time after such notice, the Contracting Officer may either (i) require the prompt correction or replacement of any article or part thereof (including preservation, packaging, packing, and marking) that did not at the time of delivery conform with the requirements of this contract within the meaning of paragraph (a) of this clause, or thereafter does not so conform in consequence of any such breach; or (ii) retain such article, whereupon the contract price thereof shall be reduced by an amount equitable under the circumstances and the Contractor shall promptly make appropriate repayment . . .

\* \* \* \* \* \*

(e) The remedies afforded the Government by paragraph (b) of this clause shall be exclusive as to any breach of the warranties in paragraph (a) of this clause, except any such breach involving latent defects, fraud or such gross mistakes as amount to fraud.

The bearings supplied by Franklin did not comply with the specifications. The tin content was unacceptable; the steel

---

* The Honorable Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

1. As to acceptance, the contract provided:
. . . Acceptance or rejection of the supplies shall be made as promptly as practicable after delivery, except as otherwise provided in this contract; but failure to inspect and accept or reject supplies shall neither relieve the Contractor from responsibility for such supplies as are not in accordance with the contract requirements nor impose liability on the Government therefor.

was of insufficient strength; and the part number was in the wrong place. (This last noncomformity did not diminish the functional integrity of the bearing.) In fact, the bearings were not numbered 171815 bearings, but obsolete bearings which had been replated and renumbered so as to resemble the bearings called for in the contract.

The failure to meet specifications was not discovered by the Navy until after all of the bearings had been accepted and 180 of the bearings installed in engines. The enormity of the hazard actuated the Navy to recall all engines in which Franklin bearings had been installed and to refit them with a proper new bearing. This retrofit operation cost the Navy $817 per engine ($147,060).

The district court held that the government had a duty to inspect the bearing and to determine whether they complied with applicable specifications; that by accepting the bearings the government waived any rights by its failure to discover the defects during its inspection; that the warranty provisions were superseded by the inspection provisions; and that in any case, any rights stemming from the breach of the warranty were waived by the government's failure to return the bearings or make any other demand for breach of the warranty. We disagree.

 The 100% inspection clause imposes no duty on the government in favor of Franklin. A reading of the clause and the testimony at trial establish that the clause was inserted only to give further protection to the government beyond that afforded by the warranty. Franklin cannot benefit by the government's failure to take advantage of this protection. We note that this same issue was raised in United States v. Aerodex, Inc., 469 F.2d 1003 (5th Cir. 1972) and was also rejected there.[2]

 Even if the government were obliged to inspect the bearings, the contract specifically provides that inspection and subsequent acceptance are not conclusive "as regards latent defects, fraud, or such gross mistakes as to amount to fraud."[3] The inspection failed to uncover at least three deviations from the specifications. One of these, the improper placement of the serial numbers, was patent and could have been discovered during visual inspection. Acceptance of the bearings precludes the government from now objecting to this nonconformity. But acceptance does not bar objection to the latent deficiencies in steel and tin not discoverable by visual inspection. The tests specified in the contracts, magnaflux or zyglo or the equivalent thereof, are not directed at discovering either the hardness of steel or tin content.[4] Thus, the inspection clause in no way absolves the contractor from liability for these two major latent defects in the bearings.

2. *Aerodex, supra* presents the same issues raised in this appeal. The only distinction between the cases is that the contractor in *Aerodex* was also held liable for fraud.

3. The facts of the case suggest that the government could have charged the contractor with fraud or gross mistakes as to amount to fraud in light of the counterfeit nature of the bearings. See United States v. Aerodex, *supra*. However, since the government did not argue this theory, we do not consider it on this appeal.

4. Simple, inexpensive, nondestructive tests exist by which the government could have discovered these deficiencies, but such tests were not specified in the contract.

The government had every right to rely on Franklin's express warranty that the bearings would conform to the specifications. "The buyer is justified in taking the seller at his word, and in relying upon the seller's statement rather than his own examination." Williston, on Contracts, § 793 at 500 (3d ed. 1964); General Electric Co. v. United States Dynamics, Inc., 403 F.2d 933 (1st Cir. 1968); Norton v. Lindsay, 350 F.2d 46 (10th Cir. 1965); Union Pipe & Machinery v. Luria Steel & Trading Corp., 225 F.2d 829 (6th Cir. 1955). While the government may have been "contributorily negligent" in not conducting a more thorough inspection, that is not a defense to a breach of warranty claim. Brown v. Chapman, 304 F.2d 149 (9th Cir. 1962).

■■ In any event, the contract specifically provides that notwithstanding inspection and acceptance the contractor warrants that the goods will conform with the specifications. The warranty supersedes the inspection clause.[5] This reading of the contract applies the settled principle that in the case of an express warranty "it is no defense that the buyer, had he inspected, might have found out the falsity of the seller's statements" 8 Williston on Contracts, § 973, at 500 (3rd ed. 1964); General Electric Co. v. United States Dynamics, Inc., 403 F.2d 933 (1st Cir. 1968).

■ The question still remains whether Franklin has an adequate defense to the recovery of damages for the breach of warranty. The warranty clause itself provides for exclusive remedies in case of a breach and the government admittedly did not pursue these remedies. But this does not afford Franklin a defense to the breach of warranty claim because breaches involving latent defects are specifically excepted from the exclusivity provision. *Aerodex, supra* 469 F.2d at 1012. There being at least two major latent defects in the bearings, government recovery for the breach of the warranty can be sustained.

■ Furthermore, the district court erred in concluding that the government waived its rights under the warranty clause because it failed to return the bearings or make any demand for breach of warranty. First, the bearings were not returned because they were counterfeit, and it would have been irresponsible for the government to allow them to return to the stream of commerce. At the close of the trial, Franklin agreed that the bearings should be destroyed. Second, Franklin was informed by letter of the breach of the warranty in August 1963, well within the one year period specified in the contract. Third, this suit was brought within the six year limitation period specified for contract actions by the United States. 28 U.S.C. § 2415.

■ Finally, we must decide the measure of damages awardable to the government. The main issue presented is whether in addition to the contract price paid for the discrepant bearings ($28,890) the government may recover consequential damages for the retrofit operation ($147,060). In *Aerodex, supra* the government was permitted to recover both such damages. While in *Aerodex* the court held that the contractor was also liable for fraud, for purposes of damages, that factor does not differentiate our case from *Aerodox* since the contracts here treat breaches involving fraud and latent defects alike.

■ We agree again with *Aerodex* in holding that Franklin is liable for all damages which are the direct and proximate result of the breach of warranty. Schlottman v. Pressey, 195 F.2d 343 (10th Cir.), cert. denied, 344 U.S. 817, 73 S.Ct. 12, 97 L.Ed. 636 (1952). Such consequential damages may include replacement of defective goods or damages for injuries caused by these defective goods. Grace & Co. (Pacific Coast) v. Pittsburgh Testing Laboratory, 249 F.2d 165 (9th Cir. 1957).

The costs of replacing the bearings were necessary and reasonable. The Navy needed the bearings on an emergency basis and installed them as soon as practicable after they were accepted into airplanes necessary to support the fleet in the Mediterranean and Far East. Since the planes posed a great hazard because of the defective bearings, it was essential that the emergency retrofit operation be conducted. Franklin knew or

---

5. We see no merit in Franklin's argument that other Navy regulations should be read to supersede the warranty clause under the so-called "*Christian* doctrine." G. L. Christian & Associates v. United States, 312 F.2d 418, cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). Those regulations do not apply where the intent of a contract is for visual inspection and the purpose of the warranty is protection of the government against latent defects.

should have known that unless it supplied the government with the proper bearings such consequences would follow.

We reverse and remand for further proceedings in conformity herewith.