In the Matter of **INSTRUMENTS FOR INDUSTRY, INC., Debtor-Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 653, Docket 73–2165.**

Second Circuit.

Argued March 12, 1974.

Decided May 28, 1974.

Mary P. McGuire, Asst. U. S. Atty., E. D. N. Y. (Robert A. Morse, U. S. Atty., and L. Kevin Sheridan, Asst. U. S. Atty., E. D. N. Y., of counsel), for appellant.

Branko Stupar, Washington, D. C. (Faulkner, Shands, Stupar & Tucker, Washington, D. C., Samuel A. Arutt, and Arutt, Nachamie, Benjamin & Rubin, New York City, of counsel), for appellee.

Before HAYS and MANSFIELD, Circuit Judges, and DAVIS, Judge.[*]

DAVIS, Judge:

Instruments for Industry, Inc. ("IFI"), the appellee, entered into a contract in 1960 with the Bureau of Naval Weapons of the Navy Department for twenty units of electronic countermeasure equipment. The agreement contained a standard form "Disputes" clause [1] requiring initial administrative

---

[*] Of the United States Court of Claims, sitting by designation.

[1] The "Disputes" clause was as follows:

"12. DISPUTES

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive, unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly appointed representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereun-

determination of disputes arising under the contract. The equipment was delivered and accepted by the Government. Under the contract terms inspection was made, and acceptance finalized, at the contractor's plant.[2] In 1965, within one year of delivery, the contracting officer notified IFI that the equipment had allegedly been defective upon delivery and acceptance, and that IFI owed more than three hundred ninety thousand dollars under the "Guaranty" clause of the contract. However, no final contracting officer's decision to this effect was issued until July 1972.

In 1966 IFI filed for a Chapter XI arrangement under the Bankruptcy Act in the United States District Court for the Eastern District of New York. A few months later, the United States filed proof of claim in these proceedings for the amount said to be due because of the faulty equipment,[3] as well as for an uncontested balance owing under another contract. IFI moved to delete the Navy's claim for the defects, arguing that final acceptance under the "Inspection" clause prevented recovery, but the Bankruptcy Judge denied the motion and designated the Armed Services Board of Contract Appeals as a fact-finding body to liquidate the Navy's claim. On review, the District Court reversed this order. The court decided that the Navy's rights were cut short by the "Inspection" clause, and expunged the claim. This appeal tests the correctness of that legal ruling.[4]

This is another instance of the frequent tension in federal procurement between two form clauses, both bearing on the same general subject and both inserted into the same government contract without explicit reconciliation. The "Guaranty" clause, under which the Navy makes its claim, provides in relevant part:

> The Contractor guaranties that at the time of delivery thereof, the supplies provided for under this contract will be free from any defects in material or workmanship and will conform to the requirements of the contract. Notice of any such defect or nonconformance shall be given by the Government to the Contractor within one year of the delivery of the defective or nonconforming supplies. If required by the Government within a reasonable time after such notice, the Contractor shall with all possible speed correct or replace the defective or nonconforming supplies or part thereof. * * * If the Government does not require correction or replacement of defective or nonconforming supplies, the Contractor, if required by the Contracting Officer within a reasonable time after the notice of defect or nonconformance, shall repay such portion of the contract price of the supplies as is equitable in the circumstances.

> This clause shall not limit any rights of the Government under the clause of this contract entitled "Inspection."

The section of the "Inspection" clause relied upon by the contractor is:

> * * * * * *
> (d) * * * Except as otherwise provided in this contract, acceptance

---

der, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

(b) This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: *Provided,* That nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law."

2. With one exception irrelevant here.

3. This claim was filed, of course, well before the contracting officer's final decision under the "Disputes" article.

4. The Government does not argue that, in the circumstances of this case, the legal question before us should have been initially presented to or determined by the Armed Services Board of Contract Appeals in a proceeding under the "Disputes" clause.

shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud.

At no time has the Government contended that the defects it claims to have discovered were latent, or that any fraud or gross mistakes amounting to fraud were in any way involved. Nor is it asserted that the defects surfaced or came into being after delivery. The only issue is whether the Navy's rights under the "Guaranty" clause, with respect to pre-existing non-latent defects, survive acceptance under the "Inspection" provision.

■ It is very difficult to harmonize the face of the two clauses which do not in words or by clear inference refer to each other. On the one hand, if the "Guaranty" article preserves the Government's rights to order correction of or payment for non-latent defects for one year after delivery—as it seems to say—then the earlier acceptance is clearly not "conclusive" as the "Inspection" clause explicitly declares for non-latent deficiencies. On the other, if the "Guaranty" clause in this contract is limited in application—because of the presence of the "Inspection" provision —to latent defects, then its actual scope would be less than its literal terms. The "Guaranty" article, thus restrictively read, would give the Government a flat right to correction of, or price adjustment for, latent defects for one full year after delivery, but with a co-existing further right, if the circumstances prove it reasonable,[5] thereafter to revoke acceptance under the "Inspection" clause with respect to latent defects.[6]

It has been suggested (*see* Federal Pacific Electric Co., IBCA 334, 1964 BCA ¶ 4494) that full reconciliation of the literal terms of the two clauses can be attained through the prefatory phrase of the "Inspection" article—"Except as otherwise provided in this contract." This language, it is said, refers to the "Guaranty" clause, and on the assumption the latter article "provides otherwise" the "Inspection" provision becomes wholly inoperative for non-latent defects.[7] The obvious vice of this suggested adjustment is that it subverts the clear import of the most important aspect of subpart (d) of the "Inspection" article—"acceptance shall be conclusive except as regards latent defects, fraud or such gross mistakes as amount to fraud"—which affirmatively gives significant rights to the contractor in the absence of the stated exceptions. Instead of according such rights to the contractor, the clause would become, in topsy-turvy fashion, no more than a further protection to the Government with regard to latent defects, fraud and gross mistakes amounting to fraud—and a minimal protection at that.[8] Contractors could not be expected to anticipate that this camouflaged and unusual reversal of the normal role of subpart (d) of the "Inspection" clause would follow from the bland generality of "[e]xcept as otherwise provided in this contract,"

---

5. The normal rule is that a party has the duty to give reasonably prompt notice, in the particular circumstances, of a breach of warranty. *See* 8 Williston on Contracts § 993 (3d ed. 1964) ; *cf.* UCC § 2–607(3)(a).

6. Consonant with the last sentence of the "Guaranty" article, *supra,* this reading would not construe that clause as limiting in any way the Government's right under the "Inspection" clause to be entirely free, with respect to latent defects, from any of the consequences of acceptance. In addition, reading the clauses together in this fashion cumulates, as far as possible, whatever warranties these provisions create. *See* UCC § 2–317.

7. Taken by itself, the "Guaranty" provision seems to cover all types of defects, latent and non-latent, in its twin references to "defects in materials and workmanship" and "conform[ity] to the requirements of the contract."

8. On that reading, the only addition to the rights granted by the "Guaranty" clause would be a possible protection beyond one year against latent defects. *See* notes 5 and 6, *supra,* and the appurtenant text. The protections against fraud and gross mistakes amounting to fraud would no doubt be implied in any event. *See* S & E Contractors, Inc. v. United States, 406 U.S. 1, 15–17, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972).

especially since there is no reference to any particular clause which "provides otherwise" and no indication in the "Guaranty" article that it has any impact on the "Inspection" provision. A more direct and specific caveat would be necessary, and has in fact been used in other forms of federal contracts to show that acceptance does not have the effect the language of the "Inspection" provision, if read alone, plainly gives it.[9]

■ The upshot is that the combination of the two mismatched clauses in this one agreement, without adequate textual harmonization, makes them both ambiguous and evokes the familiar principle of *contra proferentem*—"the general maxim that a contract should be construed most strongly against the drafter, which in this case was the United States." United States v. Seckinger, 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970). "The Government, as the author, has to shoulder the major risk of seeing that within the zone of reasonableness the words of the agreement communicate the proper notions—as well as the main risk of a failure to carry that responsibility. If the defendant chafes under the continued application of this check, it can obtain a looser rein by a more meticulous writing of its contracts and especially of the specifications." WPC Enterprises, Inc. v. United States, 323 F.2d 874, 877, 163 Ct.Cl. 1, 6–7 (1963) (footnotes omitted). "This oft-repeated and much-applied rule serves important purposes. It puts the risk of ambiguity, lack of clarity, and absence of proper warning on the draft-

ing party which could have forestalled the controversy; it pushes the drafters toward improving contractual forms; and it saves contractors from hidden traps not of their own making." Sturm v. United States, 421 F.2d 723, 727, 190 Ct.Cl. 691, 697 (1970).

■ There can be no doubt that the interpretation favoring the contractor is "reasonable and practical." *See* United States v. Seckinger, *supra,* 397 U.S. at 210–211. The express terms of the "Inspection" clause are given full effect as to non-latent defects, and, absent an acceptance expressly and reasonably conditioned upon the Government's later inspection of the supplies and equipment, the one-year-after-delivery portion of the "Guaranty" article is confined to latent defects. *See* notes 5 and 6, *supra,* and the pertinent text. That is not an unreasonable or unacceptable rationalization, in the absence of more precise guidelines. It is preferable to the opposite reading which would give full scope to the literal terms of the "Guaranty" article, at the cost of obliterating the "acceptance" portion of the "Inspection" clause. There is a less drastic intrusion upon both the contract language and the reasonable expectations of the parties.

Appellant counters that the Boards of Contract Appeals and the procuring agencies have adopted the other construction, but the administrative declarations in this area either postdate the 1960 contract in the present case,[10] or merely embody a short general dictum unclear in its reach,[11] or involve more explicit forms of agreement.[12] In fact,

9. *See* note 12, *infra.*

10. Cottman Mechanical Contractors, Inc., ASBCA No. 11387, 67–2 BCA ¶ 6566 (1967); Catalytic Eng'r & Mfg. Corp., ASBCA No. 15257, 72–1 BCA ¶ 9342 (1972); Cross Aero Corp., ASBCA No. 15092, 71–2 BCA ¶ 9076 (1971); Gresham & Co., ASBCA Nos. 13812, 13865, 70–1 BCA ¶ 8318 (1970), overturned on other grounds, 200 Ct.Cl. 97, 470 F.2d 542 (1972). Armed Services Procurement Regulations (ASPR) §§ 1–324.1, 1–324.2, 1–324.5, 1–324.7, also came after the present contract was made.

11. Catalytic Eng'r & Mfg. Corp., *supra* (no guarantee article at all in the contract); Cottman Mechanical Contractors, Inc., *supra* (only latent defects involved).

12. In the only board decision antedating this contract (McGrath & Co., ASBCA No. 1949, 58–1 BCA ¶ 1599 (1958)), the "Guaranty" clause expressly begins: "Notwithstanding the provisions of the clause of this contract entitled 'Inspection' * * *." Later authorities with more explicit terms than the agreement at bar include: United States v. Franklin Steel Products, 482 F.2d 400, 402 (9th Cir. 1973); Monroe Garment Co.,

the board holdings directly in point came within the past few years. There is no uniform, longstanding, continuous administrative interpretations pertinent to this form of contract, and certainly none which is binding on this contractor which made its agreement in 1960, delivered the goods in 1964, and had them accepted in that year.

It follows that the Government has no proper claim and that the District Court was correct in expunging it.

Affirmed.

ASBCA No. 14465, 71–2 BCA ¶ 9142; Armed Services Procurement Regulations (ASPR) § 1–324.7, 32 C.F.R. § 1.324–7 (1973); Rexach-HRH Constr. Corp., VACAB No. 966, 71–2 BCA ¶ 9052; Federal Pacific Electric Co., IBCA No. 334, 1964 BCA ¶ 4494. The contracts in those instances explicitly set forth the intended interrelationship of the two provisions in one of three alternative ways: (1) the "Guaranty" (or "Warranty") clause states that it is effective notwithstanding acceptance; (2) the "Inspection" clause states that the "Guaranty" clause is an exception to the conclusiveness of acceptance; or (3) a third clause limits the finality of acceptance.