82 F.3d 434
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AUTEK SYSTEM CORPORATION, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5013.
 United States Court of Appeals, Federal Circuit.
 March 22, 1996.
Rehearing Denied April 30, 1996.
 
 Before ARCHER, Chief Judge, RICH, and LOURIE, Circuit Judges.
 ARCHER, Chief Judge.
 
 
 1
 Autek Systems Corporation (Autek) appeals the judgment of the United States Court of Federal Claims, Autek Sys. Corp. v. United States, No. 90-710C (Ct.Fed.Cl. Oct. 24, 1994), sustaining the government's termination for default of Autek's contract with the United States Marine Corps and granting the government's counterclaim for refund of amounts paid for the delivery of defective goods. We affirm-in-part, vacate-in-part, and remand.
 
 BACKGROUND
 
 2
 On August 22, 1986, Autek contracted with the Marine Corps to manufacture electronic testheads, a microprocessor-based device that tests electronic components. The testheads are an integral part of the Marine Corps Automated Test Equipment System (MCATES). The contract required the production of 95 testheads and related equipment, software, and technical data. Under the terms of the initial contract, Autek was responsible for the hardware component of the contract, while the Northrop Corporation (Northrop) was to develop the software component as a subcontractor under Autek's contract.
 
 
 3
 Due to coordination problems with Northrop, Autek failed to meet the initial delivery schedule. As disputes continued between Autek and Northrop, the Marine Corps terminated the software portion of Autek's contract and entered into a direct contract with Northrop. Eventually, however, the contract with Northrop was terminated. Following this termination, the supervisory contracting officer, Jack Sherman, was instrumental in causing an award of the software contract to Whittaker Command and Control Systems, Inc. (Whittaker). Mr. Sherman was subsequently convicted of receiving a bribe to steer this software contract to Whittaker.
 
 
 4
 Despite the initial delays in deliveries, from September 1987 to June 1989, Autek delivered and the Marine Corps accepted testheads 1-24. During this period of time, however, the Marine Corps determined that the delivered testheads had deficiencies and began to reject subsequent testheads for the failure to meet contract specifications. Due to the noncompliance, on September 12, 1989, the Marine Corps issued a cure notice. After extensive discussions, the parties entered into Modification P00012 which identified five technical issues that Autek had to resolve, together with passing the acceptance test procedures.
 
 
 5
 As to the accepted testheads 1-24, Modification P00012 stated that their acceptance had been "with the express understanding that the contractor shall implement a solution to any deficiencies (failure to meet the requirements of the contract) and shall retrofit all units previously accepted to assure that all units are functionally identical." On November 10, 1989, the Marine Corps issued another cure notice for failure to make progress in resolving testhead deficiencies and to complete the warranty repairs and corrections pursuant to the requirements of P00012. Autek responded to the notice on December 7, 1989, denying responsibility for the alleged lack of progress. The Marine Corps thereafter terminated the contract for default on January 24, 1990.
 
 
 6
 On July 30, 1990, Autek sued in the Court of Federal Claims seeking rescission of the termination for default or conversion to termination for convenience. The government counterclaimed for $6,484,038 which it had paid for the 33 delivered testhead units. The Court of Federal Claims rejected Autek's claims and granted the government's counterclaim. Autek now appeals.
 
 DISCUSSION
 I.
 
 7
 On an appeal of a judgment from the Court of Federal Claims, we review questions of law de novo and findings of fact for clear error. Shelden v. United States, 7 F.3d 1022, 1026 (Fed.Cir.1993).
 
 
 8
 Autek challenges the government's decision to terminate the contract for default. Autek contends that, because the supervisory contracting officer committed fraud during the course of contract performance, it should not be held liable for failure to meet the contract specifications. The Court of Federal Claims fully considered and properly rejected this argument. The Court of Federal Claims specifically found there was "no causal link" between Mr. Sherman's fraud and the contract changes and, even if there were such a link, it did not make Autek's performance impossible or impractical. Absent evidence that the illegal acts committed by Mr. Sherman affected Autek's ability to perform the contract, the Court of Federal Claims' decision on the fraud issue must be sustained. See Godley v. United States, 5 F.3d 1473, 1476 (Fed.Cir.1993) ("Illegal acts by a Government contracting agent do not alone taint a contract and invoke the void ab initio rule. Rather, the record must show some causal link between the illegality and the contract provisions.").
 
 
 9
 Autek also argues that it made sufficient progress and that the termination for default was an abuse of discretion. The Court of Federal Claims found the termination for default proper because Autek had failed to make progress in correcting or solving the specific technical issues set out in Modification P00012. In fact, the court referred to Autek's December response to the November cure notice as an anticipatory repudiation of the contract. Although we reject this characterization,[1] it is clear that the technical issues were not being solved by Autek. The Court of Federal Claims in its opinion analyzed each of the technical issues in detail, pointing out the evidence establishing the criticality of the several technical problems to an acceptable working testhead and the failures of Autek to provide solutions under its approaches. Finally, the December letter from Autek, while not an anticipatory repudiation of the contract, disclaims its responsibility for making the technical corrections. Under these circumstances, the Court of Federal Claims did not err in holding the termination for default to be proper.
 
 II.
 
 10
 A. Autek also objects to the amount of the counterclaim award. The Court of Federal Claims granted the government's counterclaim for $6,484,038, or $196,486 for each of the 33 testheads for which Autek had been paid. Autek challenges this amount because the award covers testheads that were "accepted" by the Marine Corps. The Court of Federal Claims recognized that between September 1987 and June 1989 the Marine Corps accepted testheads 1-24 by the execution of "unconditional Forms DD-250 ('Material Inspection and Receiving Report')," but explained that Autek subsequently executed contract Modification P00012 in September 1989 which made those acceptances conditional. Modification P00012 states that "[t]he government accepted units # 1 through # 24 with the express understanding that the contractor shall implement a solution to any deficiencies and shall retrofit all units previously accepted to assure that all units are functionally identical." In support of its holding, the court relied on FAR 52.246-2(k) which provides that "[a]cceptance shall be conclusive, except for latent defects, fraud, gross mistakes amounting to fraud, or as otherwise provided in the contract." (Emphasis added.) After determining that all of the testhead units were only conditionally accepted, the court required a full refund. See FAR 52.246-2(1) ("If acceptance is not conclusive ... the Government ... shall have the right to require the Contractor ... to repay such portion of the contract as is equitable under the circumstances....").
 
 
 11
 Autek argues that the statement in Modification P00012 does not retroactively change the unconditional acceptances previously made, but instead reflects only warranty obligations and a promise to retrofit previously accepted testheads if future testheads are changed.
 
 
 12
 Over nearly a two-year period the Marine Corps issued a series of DD Forms 250 for testheads 1-24 as they were delivered. On this form, the government may accept goods with or without reservation: "ACCEPTANCE of listed items has been made by me or under my supervision and they conform to contract, except as noted herein or on supporting documents." The Marine Corps accepted testheads 1-24 without any qualification. In contrast, for testheads 25-32, which were delivered after Modification P00012 became effective, the DD Forms 250 contained the express reservation: "CONDITIONAL ACCEPTANCE IAW CONTRACT MODIFICATION P00012." The Marine Corps made a clear distinction between conditionally accepted testheads and those previously accepted unconditionally. See Sperry Corp. v. United States, 845 F.2d 965, 969 (Fed.Cir.1988) (explaining how the execution of a DD Form 250 ordinarily evidences final acceptance); see also Instruments for Industry, Inc. v. United States, 496 F.2d 1157, 1161 (2d Cir.1974) (recognizing the finality of acceptance "absent an acceptance expressly and reasonably conditioned").
 
 
 13
 The Court of Federal Claims held, however, that those unqualified acceptances could be and were retroactively made conditional by Modification P00012. In doing so, it relied on FAR 52.246-2(k) which provides an exception to unqualified acceptance where it is "otherwise provided in the contract." The clause containing this exception, however, was not included in the contract. The court nevertheless relied on it because FAR 46.302 made it a required clause of the contract. General Eng'g & Mach. Works v. O'Keefe, 991 F.2d 775, 779-80 (Fed.Cir.1993), was also cited by the court for reading the clause into the contract.
 
 
 14
 Even if FAR 52.246-2 could be considered as part of Autek's contract, it is inapplicable to testheads 1-24. They were unconditionally accepted and at the time of such acceptance there was no provision in the contract that "otherwise provided." Modification P00012 was not entered into by the parties until later. Moreover, we do not view the language of Modification P00012 as attempting to change retroactively the prior acceptance of testheads 1-24. The critical technical problems which the Court of Federal Claims analyzed in detail, and which Autek was obligated to resolve, were set forth in section 2 of Modification P00012; however, these provisions were applicable to testheads 31-44, not to 1-24. See infra part II.B. Thus, to the extent Autek was required by Modification P00012 to correct deficiencies and retrofit "units [1-24] previously accepted to assure that all units are functionally identical," these requirements must be considered to be in the nature of warranty obligations to correct deficiencies discovered later. (Emphasis added.)
 
 
 15
 With regard to testheads 1-24, therefore, the Marine Corps must show damages resulting from breach of warranty or breach of the deficiencies and retrofitting requirement covered by Modification P00012. We vacate the counterclaim award for these testheads and remand the warranty issue for further consideration.
 
 
 16
 B. Autek also argues that it satisfied the contract conditions for acceptance of testheads 25-33. Section 3 of Modification P00012 established the following requirements for payment for these testheads:
 
 
 17
 The DD 250s for conditional acceptance of Units 25 and 30 will be executed upon presentation after execution of this modification. Conditional acceptance of these units will constitute authorization for payment in full of the unit price.
 
 
 18
 The DD 250s for conditional acceptance of Units 26-29 will be executed upon presentation after execution of this modification. Conditional acceptance of these units will constitute authorization for payment of 85% of the unit price. The balance of the unit price is payable upon successful completion of the ATP at MCLB Albany the week of September 25, 1989.
 
 
 19
 Units 31-44 will be conditionally accepted based on successful completion of the currently approved ATP at MCLB Albany. Conditional acceptance of these units will constitute authorization for payment of 85% of the unit price. The balance of the unit price is payable upon successful resolution of the issues identified in [section] 2 of this modification.
 
 
 20
 Because of this conditional acceptance language in section 3 and because of its determination that resolution of the issues identified in section 2 of the Modification was not accomplished, the Court of Federal Claims concluded that the Marine Corps never finally accepted testheads 25-33. Autek argues, however, that the parties stipulated that the Marine Corps paid the full contract price for testheads 25-32 and that this proves final acceptance by the Marine Corps.[2]
 
 
 21
 For testheads 25 and 30, the first paragraph of section 3 provides only for conditional acceptance but inconsistently authorizes full payment of the unit prices. This inconsistent treatment is not elsewhere clarified in the modification. Further, the evidence does not explain why full payment was made for units that were only conditionally accepted, nor have we been directed to any evidence indicating that the Marine Corps changed this qualified acceptance to a final acceptance. Under these circumstances, we must affirm the Court of Federal Claims' judgment as to testheads 25 and 30.
 
 
 22
 For testheads 26-29, the second paragraph of section 3 also provides for the acceptance to be conditional and for partial payment to be made on presentation of executed DD Form 250. That paragraph, however, expressly sets forth the further tests that had to be successfully completed for the balance of the unit prices to be paid. As stipulated, the full contract price for testheads 26-29 was paid. Moreover, Autek's evidence shows that there was a "successful completion of the A[cceptance] T[est] P[rocedures]" with respect to these testheads. A Marine Corps memorandum dated October 10, 1989 explicitly states that "units 26-29 passed the Acceptance Test Procedures" and "request[s] ... payment of the remaining 15% of the unit price." We agree that this memorandum indicates that testheads 26-29 satisfied the requirements for full payment. Because all of the requirements set forth in Modification P00012 for final acceptance and full payment of the unit prices were satisfied, we must conclude that the Court of Federal Claims erred in holding that these units were not finally accepted. We also vacate the counterclaim award for these testheads and remand the warranty issue for further consideration.
 
 
 23
 For testheads 31 and 32, the third paragraph of section 3 again provides for conditional acceptance with similar yet more onerous requirements for payment. The paragraph provides for conditional acceptance with an 85% initial payment "based on successful completion of the currently approved ATP" and a 15% retainage "payable upon successful resolution of the issues identified in paragraph 2 of this modification." Thus, the modification conditioned payment upon the satisfaction of two requirements, satisfaction of ATP for an 85% payment and satisfaction of paragraph 2 of the modification for payment of the 15% retainage. Although it was stipulated that the Marine Corps paid for these testheads in full, the Court of Federal Claims found that the conditions were never satisfied because the technical deficiencies set forth in section 2 were never resolved. Again, it is unclear why the Marine Corps would make full payment for defective testheads, but in view of the express conditions for final acceptance set forth in paragraph 2 which the court determined were not satisfied, we must affirm the judgment below as to testheads 31 and 32.
 
 
 24
 C. Finally, Autek argues that acceptance occurred for testhead 35 because the DD Form 250 for that testhead does not indicate that the acceptance was conditional. The Court of Federal Claims rejected this argument, noting that a January 19, 1990 letter from Autek to the Navy Deputy General Counsel "shows that Autek knew acceptance of unit 35 was conditional, even though the form for that testhead bore no such notation." Although the letter does not make specific reference to testhead 35, it states that "[m]odification 12 to the contract provides that any acceptance of testheads by the Marine Corps is conditional." Moreover, as to testhead 35, Autek was required by Section 3 to resolve the technical issues identified in Section 2. As stated above, the Court of Federal Claims found that this did not occur. Accordingly, we will affirm the Court of Federal Claims' judgment as to testhead 35.
 
 
 25
 In summary, we affirm the Court of Federal Claims' determination that the termination for default was proper, and as for the counterclaim, we affirm-in-part as to testheads 25, 30-33, and 35 and vacate-in-part and remand as to testheads 1-24 and 26-29.
 
 
 
 [1]
 Anticipatory repudiation requires a " 'distinct and unequivocal absolute refusal to perform.' " United States v. Dekonty Corp., 922 F.2d 826, 828 (Fed.Cir.1991) (quoting Dingley v. Oler, 117 U.S. 490, 503 (1886)). The response cited by the Court of Federal Claims never makes such a statement
 
 
 [2]
 In the case of testhead 33, the record indicates that the Marine Corps never made full payment and no other evidence was presented to show that this testhead satisfied the conditions of Modification P00012. Accordingly, we must affirm the Court of Federal Claims' judgment as to testhead 33